IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01770-WDM

DELBERT R. WOOD,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Miller, J.

Claimant Delbert R. Wood (Wood) appeals a final administrative decision by defendant Michael J. Astrue[1] (the Commissioner) finding that he is not disabled within the meaning of the Social Security Act.

Background

Wood was born in 1952 and has a high school education. He has worked in the vocationally relevant past as a floor waxer, security guard, asphalt plant operator, heavy equipment operator, and park aide. He was last insured for disability benefits on March 31, 1994. *See Henrie v. U. S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993) (stating claimant must establish onset of disability prior to date

---

[1] This case was originally brought against JoAnne B. Barnhart in her official capacity as Commissioner of Social Security, but on February 12, 2007, Michael J. Astrue became the new Commissioner. Therefore, pursuant to Fed. R. Civ. P. 25(d)(1) he is automatically substituted as a party and this case will proceed in his name.

PDF Final

insured status expired).

1.  Procedural History

Wood was last insured for disability benefits on March 31, 1994. He filed his first application for benefits in November 1992 alleging he became disabled as of September 24, 1992. The application was denied on initial review and Wood did not appeal the decision. However, in September 1993[2] Wood filed a second application with the same alleged onset date. After a hearing by an Administrative Law Judge (ALJ) in March 1995, the ALJ issued an unfavorable decision in January 1996 finding that Wood was not disabled within the meaning of the Social Security Act. The Appeals Council denied review of the second application in December 1996. At that time, however, Wood had already filed his third application (filed in September 1996) again alleging that he became disabled on September 24, 1992. After considering the application, the State Agency found that Wood was disabled as of June 1, 1996, but not prior. This onset date meant that Wood was entitled to social security benefits but not disability benefits.

In February 1997, Wood filed suit in District Court for the District of Colorado seeking judicial review of his second application. Then, in March 1997 Wood requested a hearing before an ALJ regarding his third application and the Agency determination that he became disabled on June 1, 1996. Then, on May 31, 1997, the

---

[2] Plaintiff's Opening Brief, Defendant's Response Brief, and the ALJ decision all cite August 22, 1996 as the date of the third application; however, the third application has a date of September 3, 1996 and Plaintiff signed the application on September 3, 1996. (Admin. R. at 469–472.) Therefore, I include the September 3, 1996 date in this Order.

Commissioner filed and Unopposed Motion to Remand both the second and third applications to an ALJ noting that additional evidence and a finding of disability had resulted from review of the third application and may affect the second application and the disability onset date determined in the third application.

An ALJ conducted a hearing in January 1998, but issued an unfavorable decision in March 1998.  In November 1998, the Appeals Council declined to assume jurisdiction over the case.  Subsequently, Wood filed another civil action and the District Court remanded for further proceedings.[3]  A third hearing before an ALJ was held in May 2001 and, again, the ALJ issued an unfavorable decision in July 2001.  The Appeals Council declined to review the ALJ's decision.  Wood again sought judicial review and again, on November 23, 2003 the Commissioner filed an Unopposed Motion to Remand for further proceedings because the Commissioner could not locate the claims file and cassettes.

A fourth, and last, hearing before an ALJ was held March 15, 1996.  The ALJ issued an unfavorable decision in May 1996 finding that was not disabled from September 24, 1992, the alleged onset date, to March 31, 1994, the date Wood was determined to be disabled by the State Agency pursuant to his third application.  The ALJ determined that Wood retained the residual functional capacity (RFC) to engage in sedentary to light exertional work.  This meant that Wood was able to perform his past relevant work as a security guard.  Furthermore, the ALJ found that during this time,

---

[3] For unknown reasons, this District Court decision is not part of the administrative record.

based on Wood's age and education, Wood could perform a number of jobs within the national economy. Wood appealed. Since this decision came after a district court remand, this is the Commissioner's final decision for purposes of review in this court. *See* C.F.R. § 404.984.

2.   Medical History

The parties description of Wood's medical history begins in July 1992, when Wood was admitted to an emergency room following an auto accident, and X-rays indicated a deformity characterized by excessive curvature of his spine. Two months later, in September 1992, Wood sought treatment for a back strain he suffered work. Then, in October 1992, he again sought treatment for another work-related back injury. From then on, as Wood continued to seek regular treatment for his back problems, his physicians began to suspect that some of his claims stemmed from a psychological disorder. Eventually, these concerns led to diagnoses that, in addition to suffering from degenerative disk disease, Wood also suffers from major depression and a somatoform pain disorder.[4]

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d

---

[4] "Somatoform disorders are a group of psychiatric disorders characterized by physical symptoms that suggest but are not fully explained by a physical disorder and that cause significant distress or interfere with social, occupational, or other functioning." *White v. Barnhart*, 415 F.3d 654, 656 n. 1 (7th Cir. 2005) (internal quotation omitted).

1027, 1028 (10th Cir. 1994).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  The steps of the evaluation are:

(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [his] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

Following this process in this case, the ALJ first found that Wood stopped working in September 1992.  In step two, the ALJ identified degenerative disk disease and depression as severe impairments, but found that Wood's adjustment and somatoform disorders were not severe.  Then, after finding that Wood's impairments did not meet any of the listings at step three, the ALJ moved on to step four, where he found that Wood retained the capacity to perform his past work as a security guard. Therefore, the ALJ found that Wood was not disabled.

In his appeal to this court, Wood presents a multitude of arguments, which, although arranged into four loose categories, are generally presented in a scattershot

fashion. I will begin with those that appear to have the most merit.

1.  Dr. Guier's Opinion

Wood argues that the ALJ erred by failing to explain why he did not accept an opinion from Dr. Christian A. Guier saying that Wood was limited to work that required "[n]o stooping" and "[n]o bending." (Admin. R. at 248.) The ALJ acknowledged that Dr. Guier is a treating physician, *see id.* at 827 (referencing Dr. Guier's August 1993 opinion as an opinion from a treating source), and purported to give it "great weight," *id.* at 824. Nonetheless, the ALJ found at step four that Wood retained the residual functional capacity (RFC) for *occasional* bending and stooping. *Id.* at 827.

In response to Wood's argument, the Commissioner merely argues that Dr. Guier's opinion is "essentially consistent" with a functional capacity evaluation (FCE) performed by a physical therapist. This reasoning overlooks critical distinctions which may determine the result. In the disability context, a seemingly small distinction between an RFC that allows for occasional bending and stooping, and an RFC that allows no bending or stooping at all, may well be dispositive. Therefore, the ALJ was required to explain why he rejected Dr. Guier's opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (explaining that if the ALJ rejects a treating source opinion completely, he must give "specific, legitimate reasons" for doing so); SSR 96-8p, 1996 WL 374184, at *7 ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). The only explanation that the ALJ gives in this case is that the FCE is "largely consistent" with Dr. Guier's conclusions, and that the record as a whole "contains no compelling

objective evidence and no consistent findings that would persuade the [ALJ] of more restrictive limitations." (Admin. R. at 825.)  Since physical therapists' opinions are generally entitled to less weight than opinions from treating physicians, *see* C.F.R. § 404.1513, the ALJ has clearly violated the established rule that other medical evidence is reviewed "to see if [it] outweigh[s] the treating physician's report, not the other way around." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (internal quotations and alterations omitted).  Moreover, such a brief, catch-all rejection of any medical opinions that conflict with the FCE does not demonstrate that the ALJ considered all of the proper factors in connection with Dr. Guier's opinions.  *See e.g., Robinson v. Barnhart*, 366 F.3d 1078, 1082-85 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  Therefore, it is clear that the ALJ erred in connection with Dr. Guier's opinions and remand is appropriate.[5]

2.     The ALJ's Step Two Findings

Wood also argues that the ALJ erred in step two by failing to consider whether several impairments were severe or not.  Specifically, Wood points to several symptoms that he claims are consistent with multiple sclerosis: blurring vision, balance problems, weakness, and headaches.  The Commissioner's response to this argument is unclear, but appears to be that *if* the ALJ would have considered whether these impairments were severe, he would have found that they were not. (*See* Resp. Br.,

---

[5] Notably, the Commissioner does not argue that this is harmless error.  But even if he had, such an argument would also be meritless, because I may only find an ALJ's error harmless if I can "confidently say that no reasonable administrative factfinder...could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Docket No. 23, at 22-23.) However, a reviewing court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Therefore, the Commissioner's argument lacks merit.

Moreover, it is clear that Wood's assertion is correct—the ALJ did not make any specific step two findings regarding these symptoms. The closest he came was to mention, in his step four discussion, that multiple sclerosis had apparently been ruled out. (Admin. R. at 820.) But noting that Wood does not have multiple sclerosis is not the same thing as deciding whether the impairments that gave rise to multiple sclerosis concerns — i.e., blurring vision, balance problems, weakness, and headaches—are severe.

In any event, even though the issue is not raised by the Commissioner, it is at least questionable whether Wood's argument, even if true, would entitle him to remand. Arguably, step two is merely a threshold, and that as long as his case survives step two, a claimant is not prejudiced by an ALJ's failure to list a particular impairment as severe. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (explaining that if a claimant succeeds in making a sufficient "threshold showing" at step two, "the decision maker proceeds to step three"); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that ALJ's failure to find that claimant's obesity was a severe impairment could not have prejudiced her at step two because that step was resolved in her favor). However, because the ALJ's errors with regard to Dr. Guier's opinion warrant remand, I will simply advise the Commissioner that upon remand, he should consider whether

these impairments are severe.

3.  Consideration of Impairments in Combination

In a related vein, Wood argues, both in connection with his step two arguments, and in connection with his step four arguments, that the ALJ failed to consider all of his impairments in combination. Indeed, it is well established that throughout the five-step process, the ALJ is required to consider the combined effect of a claimant's impairments, even if some impairments, if considered individually, are not severe. 42 U.S.C. § 423(d)(2)(b); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not '"severe."'"); *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (holding that ALJ's failure to consider the cumulative effect of severe and non-severe impairments was reversible error). The Commissioner never responds to Wood's combination arguments, and especially in light of the ALJ's failure to discuss Wood's blurred vision, balance problems, weakness, and headaches (at step two or otherwise), it appears likely that the ALJ failed to comply with this rule. Therefore, remand is appropriate as to this issue as well. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (remanding because the ALJ's decision did not indicate that he considered the cumulative effect of claimant's impairments throughout the process); *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[w]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard . . . the proper remedy is reversal and remand.").

4.  Dr. Lovejoy's Opinions

Wood also raises two arguments of note regarding medical opinions from Dr. Brent V. Lovejoy. First, Wood argues that the ALJ failed to account for Dr. Lovejoy's disagreement with Dr. Guier. Specifically, Dr. Lovejoy noted that Dr. Guier had previously found that Wood should be restricted to "no lifting over 25 pounds, no stooping, no bending, and no sitting beyond one hour." (Admin. R. at 251.) Then, Dr. Lovejoy stated "[p]lease note, that none of these restrictions have ever been done by functional evaluation and they are based purely on subjective data." *Id.* According to Wood, this latter comment indicates disagreement with Dr. Guier's opinions.

I disagree. It is true that the ALJ is required to explain "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. However, Dr. Lovejoy's comments do not necessarily indicate disagreement. Rather, his comments are reasonably read as a mere suggestion that a full functional evaluation would likely provide a more accurate and detailed analysis of Wood's functional capacities. Therefore, the ALJ was not required to specifically address these comments.

Second, Wood argues that the ALJ erred by failing to address Dr. Lovejoy's finding that he had "extremely poor balance. (Admin. R. at 256.) Although Wood does not flesh this argument out, he may be suggesting that this finding is inconsistent with the ALJ's RFC, which indicates that Wood can "occasionally . . . balance." *Id.* at 827. However, Dr. Lovejoy's full comment was that "[Wood] is able to walk on his toes and his heels; however he has extremely poor balance and I question whether he has good perception in the lower extremities." *Id.* at 256. Thus, when read in full context, Dr.

Lovejoy's comments regarding balance are consistent with the ALJ's RFC findings because a person who can walk on their heels and toes (apparently without holding onto anything) is surely capable of occasional balancing. Therefore, I find no error regarding Dr. Lovejoy's balance comments.

5.   <u>Wood's Step Five Arguments</u>

Wood also argues that the ALJ erred in his hypothetical questions to the vocational expert in this case. Specifically, he argues that these questions did not exactly match his RFC findings, leading to erroneous step five findings. However, the ALJ made his dispositive findings at step four in this case when he found that Wood is capable of performing his past work as a security guard. Although the ALJ went on to make alternative findings regarding other jobs that Wood could perform, the ALJ's step four findings were sufficient by themselves to deny Wood's claim to disability benefits. Moreover, since this case will require remand on other grounds, the ALJ's RFC findings will likely need to be reevaluated and may well change. Therefore, I need not address Wood's step five arguments.

6.   <u>Wood's Other Arguments</u>

In addition, Wood scatters his brief with a multitude of other brief and poorly-developed arguments. For example, Wood argues that the ALJ erred by accepting only the parts of various medical opinions that supported his findings, and rejecting the other parts. However, Wood does not identify which parts of these opinions which parts were rejected. Because this case will require remand on other grounds, I will not attempt to rule on issues that are so inadequately briefed. *See Williams v. W.D.*

*Sports, N.M., Inc.*, __ F.3d __ (10th Cir. 2007), 2007 WL 2254940, at *11 (refusing to recognize issues that were inadequately briefed because courts depend upon "the testing of ideas in the crucible of the adversary process," and are therefore "reluctant to issue rulings the consequences of which [they] may not be able to foresee and the soundness of which [they] cannot assess without a meaningful joinder of issues by the parties.").

7.    <u>Wood's Request for Immediate Award of Benefits</u>

Finally, because Wood's claim for disability benefits has been pending for so long, Wood asks that rather than remanding for further proceedings, I exercise my discretion and remand with directions to award benefits immediately. *See Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 745-46 (10th Cir. 1993) (remanding for immediate benefits award where plaintiff's case had been adjudicated ten times and plaintiff's entitlement to benefits was clear, and explaining that "[t]he Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion"). Although it is certainly regrettable that this case has drug on so long, a district court has only reversed on the merits one other time. But more importantly, unlike *Sisco*, this is not a case where I can confidently say, based upon the current record, that the claimant is clearly entitled to benefits and that further proceedings on remand would be pointless. *See id.* Therefore, I will not order immediate benefits be awarded to Wood.

Conclusion

Based upon my review of the record in this case, I find that the ALJ erred by

inadequately explaining his rejection of the opinion by Dr. Guier, Wood's treating physician, that Wood could engage in no stooping or bending and failing to demonstrate that he considered all of Wood's impairments, whether severe or not, at every step of the evaluation. Additionally, the ALJ did not demonstrate his consideration of all of Wood's impairments at step two; however, because step two is arguably a threshold and remand is appropriate for other reasons, I merely recommend that the ALJ consider all impairments at step two upon remand. Accordingly, the determination that Wood is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on September 28, 2007.

                                          BY THE COURT:

                                          s/ Walker D. Miller
                                          United States District Judge